UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JEREMY SPENCER,**

    **Plaintiff,**

  v.                                     **Civil Action 2:25-cv-781**
                                               **Judge James L. Graham**
                                               **Magistrate Judge Chelsey M. Vascura**

**RYAN CAIN,** *et al.***,**

    **Defendants.**

## ORDER AND REPORT AND RECOMMENDATION

    Plaintiff, Jeremy Spencer, a Kentucky resident proceeding without the assistance of counsel, sues the Southeastern Ohio Regional Jail ("SEORJ"), several SEORJ employees, and Vinton County Sheriff Ryan Cain under 42 U.S.C. §§ 1983, 1985, and 1986 for violation of his federal constitutional rights and for violations of various Ohio statues. Plaintiff has submitted a request to proceed *in forma pauperis*. (ECF No. 1.) The Court **GRANTS** Plaintiff's request to proceed *in forma pauperis*. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a).

    This matter is also before the Court for the initial screen of Plaintiff's Complaint (ECF No. 1-1) as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons below, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's federal

claims under § 1915(e)(2)(B) for failure to state a claim on which relief can be granted. It is further **RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims in accordance with 28 U.S.C. § 1367(c)(3), and that those claims be **DISMISSED WITHOUT PREJUDICE** to re-filing in state court.

## I. BACKGROUND

On May 1, 2024, Plaintiff was arrested for aggravated menacing, possession of weapons while under a disability, and failure to appear for proceedings related to a Vinton County, Ohio traffic citation. The arresting officers brought Plaintiff to the Southeastern Ohio Regional Jail ("SEORJ"). Plaintiff complains of his treatment as a pretrial detainee at SEORJ, alleging that he was subjected to excessive force, deliberate indifference to his serious medical needs, unsanitary conditions, and retaliation for asserting his constitutional rights.

On his arrival at SEORJ, Plaintiff demanded to see a nurse before proceeding with any intake or booking procedures, as he was concerned about his blood sugar as a person with diabetes, and lied down on the floor. Defendant Jimmy Ward, an SEORJ staff member, signaled to two other unidentified officers, who assisted Ward in using "unnecessary force to physically maneuver Plaintiff's body." (Compl. ¶¶ 6–8, ECF No. 1-1.) After being taken to the entry desk, Plaintiff again lied down on the floor with his legs elevated due to feeling unwell. Another unidentified officer "forcefully lift[ed] Plaintiff off floor and slammed him into a seat without justification" and "held his large hand firmly on the back of Plaintiff's neck." (*Id.* at ¶¶ 11–14.)

Plaintiff was asked to be fingerprinted and photographed and to provide other "biological information." (*Id.* at ¶ 17.) Citing the presumption of innocence and the Fourth Amendment which Plaintiff believed protected him from having to submit to these requests, Plaintiff refused. Plaintiff was then placed "in solitary confinement/isolation (room name 'Court Holding')," allegedly in retaliation for Plaintiff's assertion of his constitutional rights. (*Id.* at ¶¶ 18–20.)

2

Plaintiff alleges that toilet in this room was "putrid" and nonfunctional, that he was not provided with a mattress, blanket, warm clothing, hygiene products, or food, and that he was cold and experiencing the onset of hypothermia. His complaints about these issues were ignored. (*Id.* at ¶¶ 21–27.)

At some point later on May 1, Defendants Corrections Officer Stephany Webb and Nurse Heather Dorsey entered Plaintiff's cell and told Plaintiff he could not see a judge until he completed the booking process, including being fingerprinted and changing into orange clothing. "In a moment of distress and panic," Plaintiff stepped out into the hallway behind the two women to continue his requests for assistance. An unidentified corrections officer "place[d] her hand on [Plaintiff's] face and shove[d] him back into the cell." (*Id.* at ¶¶ 28–30.)

On the morning of May 2, Plaintiff continued to suffer from hypothermia, and, fearing for his health and safety, "was forced to comply with intake/'booking' procedures under duress and coercion." (*Id.* at ¶¶ 31–33.) Plaintiff's fingerprints were taken by Defendant Jerry Luis, an SEORJ staff member. (*Id.*) Plaintiff was allowed to take a hot shower, alleviating his hypothermia. (*Id.* at ¶ 34.)

Plaintiff then appeared before a Judge via Zoom. Defendant Stormy Ball, an SEORJ staff member, was present in the room during the virtual hearing, but provided Plaintiff with no paperwork regarding the charges against him. Plaintiff was then placed in cell with other general population inmates. (*Id.* at ¶¶ 36–40.) Plaintiff attempted to call his mother on May 3 and reached "an electronic voice recording" which Plaintiff "kn[ew] was not his mother's voicemail." (*Id.* at ¶ 41.) Plaintiff suspects the call was intercepted by unspecified officers. (*Id.* at ¶ 42.) Over the next several days, Plaintiff filed several grievances about inadequate medical

3

treatment for constipation, cloudy urine, and his alleged mistreatment during intake procedures. (*Id.* at ¶¶ 44–48.) Plaintiff was released on bond on May 10, 2024. (*Id.* ¶ 49.)

In January 2025, Plaintiff requested public records from various Vinton County agencies. Jail staff member Becky Easterling responded by producing documents, some of which Plaintiff alleges would have made a difference to his case had it been in his possession while in jail. (*Id.* at ¶¶ 53–54.)

Plaintiff commenced this action on July 14, 2025. (ECF No. 1.) His Complaint sets forth 14 counts, asserting that Defendants violated Plaintiff's First, Fourth, Sixth, and Fourteenth Amendment rights, conspired to interfere with Plaintiff's civil rights in violation of 42 U.S.C. §§ 1985 and 1986, and violated five different Ohio statutes. As relief, Plaintiff seeks compensatory and punitive damages, a declaration that Defendants' actions were unconstitutional and violated Ohio statutes, injunctive relief to prevent further violations, the costs of this action including attorney's fees, and an order requiring the deletion of Plaintiff's biometric data from law enforcement databases.

## II. STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—

4

> \* \* \*
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). See also *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the

strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. ANALYSIS

**A. Plaintiff cannot prevail on his claims for declaratory or injunctive relief.**

As an initial matter, Plaintiff's claims for declaratory and injunctive relief must be dismissed. "When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for preenforcement review." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). In other words, "[p]ast harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). Plaintiff does not allege any ongoing or likely future violations of his constitutional rights. His claims for declaratory judgment and injunctive relief must therefore be dismissed.

**B. Plaintiff cannot prevail on his federal individual-capacity claims against the supervisory Defendants.**

Plaintiff sues Defendants Josh Van Bibber (Warden of SEORJ), Jeremy Tolson (Deputy Warden of SEORJ), and Ryan Cain (Vinton County Sheriff), alleging that they were responsible for overseeing the safety, conduct, and lawful treatment of detainees at SEORJ. (Compl. ¶ 59, ECF No. 1-1.) "As high-ranking supervisory officials, each had a duty to ensure that correctional

6

staff followed constitutional standards and responded appropriately to time-sensitive medical issues, use-of-force incidents, and grievance filings." (*Id.*) Plaintiff's claims against these Defendants must be dismissed for failure to allege these Defendants' personal involvement in Plaintiff's injuries. To prevail on a § 1983 claim, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To establish the second element, a plaintiff must show "personal involvement" by the defendant. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior.*" *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (cleaned up). The same standards for personal involvement apply to claims brought under 42 U.S.C. §§ 1985 and 1986. *See Veres v. Monroe Cty.*, 364 F. Supp. 1327, 1331–32 (E.D. Mich. 1973), *aff'd sub nom. Veres v. Cty. of Monroe*, 542 F.2d 1177 (Table) (6th Cir. 1976).

      Plaintiff's allegations do not meet this standard. Plaintiff alleges only that these supervisory employees were responsible for oversight of SEORJ staff and that they took no corrective action regarding SEORJ staff's allegedly improper conduct. (Am. Compl. ¶ 59–61, ECF No. 1-1.) Plaintiff does not plausibly allege that these supervisory Defendants implicitly authorized, approved, or knowingly acquiesced in their staff's allegedly unconstitutional conduct. Plaintiff's federal individual-capacity claims against the supervisory Defendants must therefore be dismissed.

7

**C.     Plaintiff cannot prevail on his federal individual-capacity claims against the remaining individual Defendants.**

Plaintiff's Complaint includes a laundry list of alleged constitutional violations, but the vast majority of Plaintiff's allegations are directed only to unspecified "Defendants." Plaintiff also names as Defendants "John/Jane Doe Correction Officers." But the only reference to these Doe Defendants appears in the party listing at the beginning of the Complaint, where Plaintiff states these Defendants "are individuals employed by the jail who participated in or failed to prevent the violations of Plaintiff's rights described herein. Their identities are presently unknown but will be substituted upon discovery." (Compl., ECF No. 1-1, PAGEID #15.)

The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)) (emphasis in original). "[C]ategorical references to 'Defendants'" do not meet this standard. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012). Plaintiffs' categorical references to unspecified "Defendants" and his conclusory allegations concerning the Doe Defendants do not suffice. Thus, the undersigned will consider only those allegations directed to one or more identified Defendants.

First, Plaintiff fails to state a claim against Defendant Jerry Luis. The only allegations directed to Mr. Luis are that he "was the one to take [Plaintiff's] fingerprints." (Compl. ¶ 33, ECF No. 1-1.) Taking Plaintiff's fingerprints as part of the jail intake process does not violate any of Plaintiff's constitutional rights. Plaintiff's federal individual-capacity claim against Mr. Luis must therefore be dismissed.

Second, the only allegations directed toward Defendant Stormy Ball are that she was "in the room doing paperwork" while Plaintiff made his initial appearance before a judge via Zoom, and that she did not provide "any type of paperwork" "regarding the nature and cause of the alleged charges, service of summons, citation/ticket or charging instrument in regards to the weapons under disability or aggravated menacing accusations." (*Id.* at ¶¶ 36, 38.) Plaintiff alleges that denial of charge information and paperwork violated his Sixth Amendment right to notice of the charges against him. But that right was presumably satisfied when Plaintiff made his initial appearance before the judge, who would have notified Plaintiff of the charges. Plaintiff does not allege that the judge omitted this information, and his allegations pertaining to Ms. Ball do not plausibly suggest that she was somehow obligated to independently provide notice of the charges in writing. *See Lopez v. Smith*, 574 U.S. 1, 5–6 (2014) (Sixth Amendment notice requirement satisfied by providing notice charges at preliminary examination). Plaintiff's federal individual-capacity claim against Ms. Ball must therefore be dismissed.

Third, Becky Easterling is alleged only to have responded to Plaintiff's public records request, with apparently relevant and useful documents. (Compl. ¶¶ 53–54.) Plaintiff complains that Ms. Easterling "did not receive a notarized submission of the records request that would have verified [Plaintiff] was the true applicant and recipient of the information" and that she "failed to redact sensitive information in accordance with Ohio Public Records Act such as social security number." (*Id.* at ¶¶ 57–58.) But Plaintiff does not suggest that anyone other than Plaintiff, in fact, received the documents he requested; nor is it plausible that the documents contained the social security number of anyone other than Plaintiff, who is obviously entitled to view his own social security number. In short, Plaintiff's allegations do not plausibly suggest that

9

Ms. Easterling violated any of Plaintiff's constitutional rights. Plaintiff's federal individual-capacity claim against Ms. Easterling must therefore be dismissed.

Fourth, the only allegations directed to Corrections Officer Stephanie Webb or Nurse Heather Dorsey are that they entered Plaintiff's cell and told him that he could not see a judge until he completed the booking process. (*Id.* at ¶¶ 28–29.) Again, there is nothing unconstitutional about requiring a pretrial detainee to undergo standard intake procedures. Plaintiff also alleges that he followed Webb and Dorsey out of his cell and into the hallway, "only to be have [*sic*] the Corrections officers [*sic*] place her hand on [Plaintiff's] face and shove him back into the cell." (*Id.* at ¶ 30.) To the extent that the unspecified "Corrections officers" refer to Ms. Webb, these allegations do not plausibly suggest that Ms. Webb's use of force was unreasonable in light of the need to maintain order in the jail. *See, e.g.*, *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) ("[A] pretrial detainee must show . . . that the force purposely or knowingly used against him was objectively unreasonable."). Plaintiff's federal individual-capacity claims against Ms. Webb and Ms. Dorsey must therefore be dismissed.

Fifth, Plaintiff alleges that Defendant Jimmy Ward signaled to two other officers, and, collectively, the three of them used "unnecessary force to physically maneuver Plaintiff's body" after Plaintiff refused to get up off the floor. (Compl. ¶¶ 6–8, ECF No. 1-1.) Again, given Plaintiff's lack of cooperation, it was not objectively unreasonable for Mr. Ward to "physically maneuver" Plaintiff's body to a seated position. As Plaintiff makes no other allegations against Mr. Ward, Plaintiff's federal individual-capacity claims against Mr. Ward must be dismissed.

Finally, as Plaintiff has not plausibly alleged a constitutional violation by any of the named Defendants under 42 U.S.C. § 1983, he also has not plausibly alleged that Defendants conspired to violate his rights under 42 U.S.C. § 1985 or that Defendants aided and abetted

10

violations of § 1985 under 42 U.S.C. § 1986. *See Gearheart v. Fed. Rsrv. Bank of Cleveland*, 516 F.2d 353, 354 (6th Cir. 1975) ("A necessary element of a civil rights claim pursuant to 42 U.S.C. §§ 1983 and 1985 is the violation of a constitutional right."); *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980) (no violation of § 1986 is possible absent a violation of § 1985). In sum, all of Plaintiff's federal individual-capacity claims must be dismissed.

**D.     Plaintiff cannot prevail on his *Monell* claims against SEORJ or his federal official-capacity claims.**

Moreover, Plaintiff has not stated a claim against SEORJ or the Southeastern Ohio Corrections Commission. To begin with, SEORJ is not an appropriate Defendant because, as a county agency, it is not *sui juris*—that is, it lacks the capacity to be sued. *See*, *e.g.*, *Linkous v. Hamilton Cnty. Job & Fam. Servs.*, No. 1:15-CV-809, 2016 WL 490058, at *2 (S.D. Ohio Jan. 4, 2016) (county departments of jobs and family services are not *sui juris*), *report and recommendation adopted*, No. 1:15CV809, 2016 WL 455415 (S.D. Ohio Feb. 5, 2016); *see also Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (affirming district court's holding that sheriff's department, as arm of the county, is not *sui juris*). Plaintiff's claims against SEORJ must therefore be dismissed.

But even if the Court were to liberally construe Plaintiff's Complaint to advance a claim against Vinton County through its Board of Commissioners, those claims could not survive. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Nichols v. Wayne Cty. Mich.*, 822 F. App'x 445, 448 (6th Cir. 2020) ("To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a

11

municipal policy or custom.") (citing *Hardrick v. City of Detroit,* 876 F.3d 238, 243 (6th Cir. 2017)). A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).

Here, Plaintiff's allegations fail to set forth any constitutional violations, whether caused by a municipal policy or otherwise. And even if they had, Plaintiff's allegations that SEORJ, the Southeastern Ohio Corrections Commission, or Vinton County were responsible for "adopting, approving, or failing to correct unconstitutional policies and practices at SEORJ, including failure to respond to grievances, tolerate abusive conduct by jail staff, and deny necessary medical care" are conclusory. That is, "[h]e offers only . . . bare legal conclusions which the Court properly disregards." *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 651 (S.D. Ohio 2023) (dismissing a claim for *Monell* liability due to conclusory allegations); *see also Assi v. Hanshaw*, 625 F. Supp. 3d 722, 750 (S.D. Ohio 2022) (dismissing a claim for *Monell* liability because it was "simply too conclusory to survive"). Plaintiff therefore has not plausibly alleged that any of SEORJ's employee's allegedly improper actions were taken pursuant to a custom or policy of the Southeastern Ohio Corrections Commission or Vinton County such that *Monell* liability would be available. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's *Monell* claims must be dismissed.

Further, Plaintiff cannot prevail on his federal official-capacity claims against any of the named Defendants. A suit against a government official in his or her official capacity is "not a

12

suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). But, as just discussed, Plaintiff has not stated a claim against the relevant entities (Vinton County or the Southeastern Ohio Corrections Commission). Plaintiff's federal official-capacity claims against the named Defendants must therefore be dismissed.

E.  **Because Plaintiff has not stated any federal claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.**

Finally, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's remaining state-law claims for violation of various Ohio statutory provisions. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." The United States Court of Appeals for the Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citations omitted). Here, Plaintiff's allegations related to the Ohio Revised Code fail to provide a basis for a claim over which this Court has original jurisdiction. "The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for federal-question jurisdiction, and § 1332, which provides for diversity of citizenship jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) (cleaned up). Federal-question jurisdiction is implicated when a plaintiff pleads a claim "arising under" the federal laws or the United States Constitution. *Id*. (citation omitted). For a federal court to have diversity jurisdiction under § 1332(a), there must be complete diversity, meaning that each plaintiff must be a citizen of a different state than each defendant, and the amount in controversy must exceed $75,000. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

13

Plaintiff's claims under the Ohio Revised Code pertain squarely to state law and do not arise under federal laws or the United States Constitution. Nor has Plaintiff alleged that he and Defendants are citizens of different states. Thus, Plaintiff has failed to plausibly allege facts on which the Court could rely to conclude that this Court has original subject-matter jurisdiction over his state-law claims. Because the undersigned is recommending dismissal of all of Plaintiff's federal claims, it is further recommended that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims and that it dismiss any such claims without prejudice to re-filing in state court.

## IV. DISPOSITION

For these reasons, Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 1) is **GRANTED**. The undersigned **RECOMMENDS** that Plaintiff's federal claims be **DISMISSED** for failure to state a claim on which relief can be granted, and that Plaintiff's Ohio claims be **DISMISSED WITHOUT PREJUDICE** to re-filing in state court.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE