IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jeremy Spencer,

      Plaintiff,         Case No. 2:25-cv-781
                                  Judge James L. Graham
  v.                                   Magistrate Judge Chelsey M. Vascura

Ryan Cain, *et al.*,

      Defendants.

Opinion and Order

    Plaintiff Jeremy Spencer, proceeding *pro se*, brings this action concerning mistreatment he allegedly experienced while incarcerated at the Southeastern Ohio Regional Jail (SEORJ) from May 1, 2024 to May 10, 2024. Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that jail staff used excessive force against him, denied him medical care, placed him in unsanitary conditions of confinement, and retaliated against him for asserting his rights. The Magistrate Judge conducted an initial screen of the Complaint under 28 U.S.C. § 1915(e)(2) and recommended that all of plaintiff's federal claims be dismissed for failure to state a claim upon which relief can be granted. *See* Doc. 5.

    This matter is before the Court on plaintiff's objections to the Magistrate Judge's initial screen Report and Recommendation. Attached to the objections is a proposed Amended Complaint. For the reasons stated below, the Court overrules the objections, adopts the Report and Recommendation, dismisses the Complaint, and denies leave to amend.

I.    Background

    A.    The Complaint's Allegations and Claims

    Spencer was arrested on May 1, 2024 in Vinton County, Ohio by a law enforcement official who is not named as a defendant. The arrest was for his failure to appear in court on a traffic citation. The arresting officer and two other officers (also not defendants) transported Spencer to SEORJ, where he remained after the three officers allegedly conspired to file a false "felony weapons charge" against plaintiff. Compl., ¶ 6.

    At the start of the intake process at SEORJ, Spencer asked defendant Jimmy Ward, a staff member, thar he be allowed to see a nurse because he is a Type 2 diabetic and was worried about his blood sugar level. Spencer laid himself down on the floor, "demanded to see a nurse," and refused to

1

cooperate with the intake process. *Id.* Ward enlisted two corrections officers to help him "physically maneuver" Spencer off the floor and "slam" him into a seat. *Id.*, ¶¶ 8, 13.

The medical staff allegedly conducted a blood sugar test but otherwise failed to evaluate Spencer's medical needs and diet. Spencer was allegedly denied a meal on May 1.

During the intake process, jail staff attempted to take Spencer's photo and fingerprints and also sought to gather personal information from him, but he refused to cooperate on the grounds that fingerprinting and information-gathering violated his rights under the Fourth Amendment to the United States Constitution.

In alleged retaliation for refusing to cooperate, staff placed Spencer in solitary confinement. He alleges that the cell lacked functional plumbing and that he was denied a mattress, blanket, warm clothing, and personal hygiene supplies. Spencer contends that he began to get hypothermia.

Defendant corrections officer Stephany Webb and defendant nurse Heather Dorsey came to Spencer's cell and told him that he would need to submit to fingerprinting before the intake process could be completed. Spencer, in "a moment of distress and panic," left his cell while Webb and Dorsey were there and attempted to walk behind them. *Id.*, ¶ 30. Webb placed her hand on Spencer's face and shoved him back into the cell, while another corrections officer came to help. Spencer apparently spent overnight in the isolation cell.

On the morning of May 2, Spencer was given cereal. He submitted to finishing the intake process, and defendant staff member Jerry Luis took his fingerprints. Once booked into the jail, Spencer was allowed to take a hot shower and was provided with basic necessities, including a bed and blanket. He was assigned a cell with the general population.

Spencer made an initial appearance before a judge via Zoom videoconference from the jail. Defendant staff member Stormy Ball supervised Spencer during the court proceeding but allegedly failed to provide him with paperwork relating to the charges against him. Spencer was permitted to fill out a request for a public defender.

On May 3, Spencer was allowed to make a phone call. He tried to call his mother, but it went to voicemail. He believes that jail staff "intercepted" his call. *Id.*, ¶ 42. He also asked a nurse for a laxative but was given a stool softener.

On May 5, Spencer filed a medical grievance stating that he was constipated and that the nurse had not provided him with a laxative. He alleges that his urine became cloudy. A nurse told him that his issues were caused by a change in diet.

2

On May 8, Spencer filed a grievance complaining of mistreatment and violations of his rights since arriving at SEORJ.

On May 10, Spencer was released from SEORJ on bond with an ankle monitor.

Spencer later made a records request of SEORJ on January 9, 2025. He received a response on January 15 from defendant staff member Becky Easterling. Spencer maintains that her response was inadequate because she did not provide all of the requested information and because she failed to redact Spencer's sensitive personal information.

Named as defendants in the Complaint are Ward, Webb, Dorsey, Luis, Ball, and Easterling. Also named as defendants are the SEORJ itself, Warden Josh Vanbibber, Deputy Warden Jeremy Tolson, and Vinton County Sheriff Ryan Cain.

The Complaint asserts claims under § 1983 for use of excessive force, deliberate indifference to medical needs, subjection to unsanitary conditions of confinement, and retaliation, as well as a claim for denial of due process concerning the initial appearance. The Complaint further asserts claims under §§ 1985 and 1986 for conspiracy to interfere with civil rights. The Complaint also brings numerous claims under Ohio law, including one under the Ohio Public Records Act for Easterling's allegedly deficient response to Spencer's records request.

### B. The Report and Recommendation

The Magistrate Judge found that the Complaint fails to state a claim against SEORJ because it, as a county agency, is not *sui juris* or capable of being sued. *See Carmichael v. City of Cleveland*, 571 Fed. App'x 426, 435 (6th Cir. 2014). The Magistrate Judge further found that to the extent the claims can be construed to be properly brought against Vinton County through its Board of Commissioners, the claims still failed because plaintiff had not alleged the existence of a municipal custom or policy that caused the constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

The Magistrate Judge determined that the claims against Warden Vanbibber, Deputy Warden Tolson, and Sheriff Cain should also be dismissed. According to the Complaint, "a[s] high-ranking supervisory officials, each had a duty to ensure that correctional staff followed constitutional standards." Complaint, ¶ 59. However, the Complaint did not allege personal participation by these defendants in the alleged constitutional violations, and "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).

The Magistrate turned next to the individual capacity claims against the remaining defendants and found the allegations to be deficient. Corrections officer Webb and Nurse Dorsey were alleged to have told Spencer that he was required to complete the booking process. The Magistrate Judge

3

found no support for the claim that requiring an arrestee to submit to standard jail intake procedures violates a constitutional right. The Magistrate Judge further found that Webb's alleged use of force on Spencer – shoving him back into the cell after he left the cell without permission and tried to walk behind her and Dorsey – was not unreasonable in light of the need to maintain order in the jail.

Staff member Ward was alleged to have helped physically maneuver Spencer off the floor and "slam" him into a seat. The Magistrate Judge found that Ward's conduct was not unreasonable given that the Complaint acknowledges that Spencer was being uncooperative with the intake process, having laid himself on the floor and demanded immediate access to a nurse upon arriving at the jail.

Staff member Luis was alleged only to have taken Spencer's fingerprints. The Magistrate Judge observed that the taking of fingerprints during the booking process does not violate any constitutional rights under the Fourth or Eighth Amendment.

Staff member Ball was alleged to have failed to provide Spencer with paperwork during his initial appearance before a judge via Zoom. The Magistrate Judge determined that Ball, as a jail employee, did not have an obligation under the Sixth Amendment to provide notice to Spencer of the charges against him, and that the state court judge provided him such notice in any event.

Regarding staff member Easterling, who allegedly failed to properly respond to Spencer's records requests under Ohio law, the Magistrate Judge noted that no federal constitutional rights were implicated by Easterling's alleged conduct.

Finally, the Magistrate Judge recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims.[1]

## II. Discussion

### A. Objections to the Report and Recommendation

The Court reviews *de novo* those portions of the Report and Recommendation to which plaintiff makes an objection. *See* 28 U.S.C. § 636(b)(1)(C).

Plaintiff presents a long list of objections, none of which are persuasive. He begins by stating that the Magistrate Judge should have allowed him to amend his Complaint. But a motion for leave to amend was not before the Magistrate Judge; plaintiff did not seek leave to amend until he filed his objections. That request is addressed in Part II.B below.

---

[1] The Complaint left open the possibility that the Court might have diversity jurisdiction under 28 U.S.C. § 1332. The address listed for Spencer was a "care of" address in Florence, Kentucky. But plaintiff clarified in his objections that he is not a Kentucky resident, *see* Doc. 6 at PAGEID 93, and his proposed Amended Complaint asserts federal question jurisdiction under 28 U.S.C. § 1331 as the sole basis for subject matter jurisdiction. *See id.* at PAGEID 99.

Plaintiff next objects that the Magistrate Judge applied the wrong standard in screening the Complaint because she did not accept his factual allegations as true.  Upon *de novo* review, the Court finds that the Magistrate Judge applied the correct standard under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), accepting plaintiff's properly pled facts as true but rejecting any conclusory allegations.

Plaintiff contends that the Magistrate Judge mistakenly described him as a prisoner and thus wrongly subjected his Complaint to an initial screening.  Plaintiff states that he is on probation and not incarcerated.  This objection fails, as the Magistrate Judge conducted the initial screening pursuant to 28 U.S.C. § 1915(e)(2) (applying to proceedings *in forma pauperis*) and not 28 U.S.C. § 1915A (applying to prisoner civil actions).

According to plaintiff, the Magistrate Judge improperly disregarded the "constitutional nullity" of the state charges brought against him, which were "rife with constitutional and procedural violations." Doc. 6 at ¶ 5.  The Court, however, finds that this action under § 1983 is not the proper avenue in which to attack the state court sentence.  *See Heck v. Humphrey*, 512 U.S. 477, 486 (1994) (generally barring the use of § 1983 actions to launch a collateral attack upon a criminal conviction).

As to supervisory liability, plaintiff argues that the Magistrate Judge ignored allegations in paragraphs 59 through 61 of the Complaint establishing that Warden Vanbibber, Deputy Warden Tolson, and Sheriff Cain had notice of the constitutional violations against Spencer.  The Magistrate Judge expressly examined these paragraphs, which assert that defendants should be held liable based on a respondeat superior theory.  *See* Complaint, ¶ 59 (asserting that defendants are liable because they are "high-ranking supervisory officials"); *id.*, ¶ 60 (asserting that defendants had "constructive notice" of the violations because of their supervisory positions); *id.*, ¶ 61 (asserting that defendants failed to take action despite constructive notice of the misconduct).  Upon *de novo* review, the Court agrees with the Magistrate Judge that the Complaint fails to state a plausible basis for holding the supervisory officials liable for the alleged violations of plaintiff's constitutional rights.

Turning to the excessive force claims, plaintiff maintains that the Complaint adequately alleges that he was slammed into a chair by Ward and shoved by Webb.  While it is true that the Complaint alleges that Ward and Webb used force, plaintiff ignores that the Complaint fails to contain factual allegations supporting an inference that the uses of force were unreasonable.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) ("[A] pretrial detainee must show . . . that the force purposely or knowingly used against him was objectively unreasonable.").  The Complaint itself states that Spencer was not cooperating with the intake process and that he had endangered Webb by leaving the cell

5

without permission and trying to walk behind her. In light of these allegations, the uses of force were not objectively unreasonable.

Plaintiff contends that the Report and Recommendation does not directly resolve his allegations about hypothermia, denial of bedding, unsanitary conditions, and retaliation. The Court finds that the Complaint does not attribute those instances of misconduct to any of the defendants in their individual capacities. That is, defendants Ward, Webb, Dorsey, Luis, Ball, and Easterling are not alleged to have created Spencer's conditions of confinement or have been deliberately indifferent him. And, again, Warden Vanbibber, Deputy Warden Tolson, and Sheriff Cain are not alleged to have known about these conditions, such that they approved of or knowingly acquiesced in them. Nor does the Complaint allege that the conditions of confinement or retaliation were the result of a municipal policy or custom.

Regarding the claim that Ball failed to provide plaintiff with notice of the state court charges during the initial appearance by videoconference, plaintiff argues that he had a constitutional right to receive "written" charges. However, the constitutional right at issue guarantees fair and adequate notice of the charges from the State. *See Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Plaintiff does not dispute that the state court judge gave him such notice during the initial appearance. The Court finds no authority for the proposition that the notice must be written, and, more importantly, no authority for the argument that a jail staff member is obligated to provide the notice.

Finally, plaintiff objects to the Magistrate Judge's analysis of his claim that he was unlawfully forced to have his fingerprints taken. Plaintiff argues that there was no probable cause to support the taking of his fingerprints. While plaintiff is correct that the Fourth Amendment generally requires probable cause or a warrant to support the compelled taking of fingerprints, *see Hayes v. Florida*, 470 U.S. 811, 815 (1985), here the Complaint alleges that plaintiff was arrested on a traffic violation and jailed on a felony weapons charge. The arrest and charge were sufficient to support the taking of plaintiff's fingerprints during the booking process. *See id.* at 817 (compelled fingerprinting is lawful where "there is reasonable suspicion that the suspect has committed a criminal act"). Plaintiff maintains that the weapons charge was fabricated by non-defendant officers, but there are no allegations to support an inference that Luis knew or should have known of the falsity of the charge. *Cf. Clark v. Oakland Cnty.*, No. 08-14824, 2009 WL 5217682, at *4 (E.D. Mich. Dec. 29, 2009) (defendant relying in good faith on the validity of an arrest warrant is not liable under § 1983).

Accordingly, the Court finds that plaintiff's objections are without merit. The Court adopts the recommendation that the federal claims should be dismissed for failure to state a claim and the

recommendation that the Court decline to exercise jurisdiction over plaintiff's remaining state law claims for.  *See Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009).

    **B.**    **Leave to Amend**

Plaintiff argues that he should be given leave to amend the Complaint, and he has submitted a proposed Amended Complaint.  Leave to amend is generally granted under Rule 15 of the Federal Rules of Civil Procedure, but the Court finds that the amendments are futile because they still fail to state a claim.  *See Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 591 (6th Cir. 1990).

The Amended Complaint adds allegations to the effect that Warden Vanbibber and Deputy Warden Tolson implemented polices at SEORJ for the intake and booking of detainees.  SEORJ staff were required to follow the policies, which included the taking of fingerprints and photographs, placing detainees in holding cells, and conducting a medical assessment.

The Amended Complaint does not allege that the booking policies were unconstitutional.  Rather, it alleges that unidentified jail staff failed to follow the policies in booking Spencer.  Not only has plaintiff failed to identify wrongful conduct on the part of any of the named defendants, but he has improperly equated the failure to follow jail booking procedures with constitutional violations.

The Court thus denies plaintiff leave to amend the Complaint.

**III.**    **Conclusion**

For the reasons stated above, plaintiff's objections (Doc. 6) are overruled, the Report and Recommendation (Doc. 5) is adopted in its entirety, and plaintiff's federal claims are dismissed.  The Court declines to exercise supplemental jurisdiction over the state law claims and denies plaintiff's request for leave to amend the Complaint.  The Clerk of Court shall enter judgment for defendants.

    *s/ James L. Graham*
    JAMES L. GRAHAM
    United States District Judge

DATE: December 1, 2025